CV  02  1524

Wayne M. Carlin
Regional Director (WC-2114)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
233 Broadway
New York, New York 10279
(646) 428-1510

HURLEY, J.

LINDSAY, M.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                    :
SECURITIES AND EXCHANGE COMMISSION, :
                                                    :
                            Plaintiff,              :       No. 02-CV-
                                                    :
        -against-                                   :
                                                    :
PAUL SKULSKY,                                       :
JEFFREY SKULSKY,                                    :       **COMPLAINT**
EDWARD R. CAPUANO,                                  :
CINDY L. EISELE,                                    :
JOSEPH CASUCCIO,                                    :
JEFFREY J. SCHNEIDER,                               :       **PLAINTIFF DEMANDS**
AARON CHAITOVSKY,                                   :       **TRIAL BY JURY**
ROBERT GLASS,                                       :
ASHLEY NEMIROFF,                                    :
ROCCO SICLARI,                                      :
GEORGE A. CARHART,                                  :
HOWARD ZELIN,                                       :
CARL D. D'ELIA,                                     :
CRAIG A. BRANDWEIN, and                             :
DONALD CATAPANO,                                    :
                                                    :
                            Defendants.             :
------------------------------------------------------------x

        Plaintiff Securities and Exchange Commission ("Commission"), for its complaint against

Defendants Paul Skulsky, Jeffrey Skulsky, Edward R. Capuano ("Capuano"), Cindy L. Eisele

("Eisele"), Joseph Casuccio ("Casuccio"), Jeffrey J. Schneider ("Schneider"), Aaron Chaitovsky

("Chaitovsky"), Robert Glass ("Glass"), Ashley Nemiroff ("Nemiroff"), Rocco Siclari

("Siclari"), George ⬤ Carhart ("Carhart"), Howard Zelin ("Zelin"), Carl D. D'Elia ("D'Elia"),
Craig A. Brandwein ("Brandwein"), and Donald Catapano ("Catapano") (collectively,
"Defendants"), alleges as follows:

## SUMMARY

1.      From May 1997 through June 2000, AppOnline.com, Inc. ("AppOnline"), a now-
bankrupt mortgage company, engaged in two simultaneous schemes that defrauded AppOnline's
public investors.  First, AppOnline diverted more than $60 million that was supposed to be used
to fund mortgage loans in order to pay AppOnline's operating expenses and, thereafter, covered
up the truth in its publicly-filed financial reports.  Second, AppOnline manipulated the public
market for AppOnline common stock by paying bribes in exchange for three brokerage firms
recommending the purchase of AppOnline stock to their retail customers, thereby defrauding
those retail customers and the investing public.

2.      Paul Skulsky (a previously-convicted felon and undisclosed control person of
AppOnline), Jeffrey Skulsky (AppOnline's President), Capuano (AppOnline's Chief Executive
Officer), Eisele (AppOnline's Chief Financial Officer), Casuccio (an outside auditor), Schneider
(an outside auditor), Chaitovsky (an outside auditor), and Glass (an outside auditor) all
participated in the financial fraud scheme.  As the control persons of AppOnline, Paul Skulsky,
Jeffrey Skulsky, and Capuano directed the financial fraud.  Jeffrey Skulsky, Capuano, and Eisele
signed false financial reports filed with the Commission.  Eisele, Casuccio, and Schneider
implemented the financial fraud.  Casuccio, Schneider, Chaitovsky, and Glass issued fraudulent
audit opinions concerning AppOnline's financial statements.

3.      Paul Skulsky also directed the market manipulation scheme.  Nemiroff, Siclari,
Carhart, Zelin, D'Elia, Brandwein, and Catapano (collectively, "Broker Defendants") all

participated in the market manipulation scheme by receiving bribes from Paul Skulsky in exchange for recommending the purchase of AppOnline stock to retail customers. By paying these bribes, Paul Skulsky created an artificial market for AppOnline stock, which distorted both the trading volume and price for AppOnline stock. As a result, 1.4 million shares of AppOnline stock were sold to unsuspecting investors for more than $5.5 million.

4.    As a result of the foregoing, and as further described below,

a.    Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, Schneider, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano have engaged in, and unless enjoined, will continue to engage, directly or indirectly, in acts, practices, or courses of business, that constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

b.    Chaitovsky and Glass, have engaged in, and unless enjoined, will continue to engage, directly or indirectly, in acts, practices, or courses of business, that constitute violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Section 10A of the Exchange Act, 15 U.S.C. § 78j-1.

c.    Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider, have engaged in, and unless enjoined, will continue to engage, directly or indirectly, in conduct that constitutes a violation of Section 13(b)(5) of the Exchange Act, 15 U.S.C. §§ 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.

d.    Paul Skulsky, Jeffrey Skulsky, and Capuano have engaged in, and unless enjoined, will continue to engage, directly or indirectly, or as controlling persons within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), in conduct that constitutes a

3

violation of Sections 13(a) and 13(b)(2) of the Exchange Act, 15 U.S.C. §§ 78m(a) and

78m(b)(2), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and

240.13a-13.

          e.     Eisele, Casuccio, Schneider, Chaitovsky, and Glass, have engaged in, and

unless enjoined, will continue to engage in conduct that, directly or indirectly violates, or that

aids and abets within the meaning of Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e),

violations of, Sections 13(a) and 13(b)(2) of the Exchange Act, 15 U.S.C. §§ 78m(a) and

78m(b)(2), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and

240.13a-13.

### JURISDICTION AND VENUE

     5.    The Commission brings this action to pursuant Section 20(b) of the Securities

Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and seeks

permanent injunctions to restrain and enjoin the Defendants from engaging in the acts, practices

and courses of business alleged herein.  The Commission also seeks an order requiring Paul

Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, Schneider, Nemiroff, Siclari, Carhart,

Zelin, D'Elia, Brandwein, and Catapano to disgorge their ill-gotten gains and pay prejudgment

interest thereon.  The Commission also seeks civil monetary penalties, pursuant to Section 20(d)

of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §

78u(d)(3), against all Defendants.  Finally, the Commission seeks an order, pursuant to Section

20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15

U.S.C. § 78u(d)(2), barring Paul Skulsky, Jeffrey Skulsky, and Capuano from acting as an officer

or director of a public company.

6.       This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

7.       Venue lies in this Court pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Certain of the transactions, acts, practices and courses of business alleged herein occurred within the Eastern District of New York.  For instance, AppOnline maintained its principal place of business in Melville, New York, and all of the defendants engaged in certain acts in the Eastern District of New York.

8.       Defendants, directly or indirectly, have each made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and/or the mails, in connection with the acts, practices and courses of business alleged herein.

## DEFENDANTS

9.       **Paul Skulsky**, age 58, resides in Woodmere, New York.  From 1997 to 2000, Paul Skulsky served as a de facto senior officer and director of AppOnline.  In 1985, Paul Skulsky was convicted of criminal mail fraud, racketeering, and tax evasion charges in connection with the sale of securities in a multi-million dollar tax shelter scheme.

10.       **Jeffrey Skulsky**, age 50, resides in New York, New York.  Jeffrey Skulsky was AppOnline's President and a director from November 1998 to June 2000.  He is the brother of Paul Skulsky.

11.       **Capuano,** age 53, is a resident of Larchmont, New York.  Capuano was AppOnline's Chief Executive Officer ("CEO") from May 1997 through June 2000.

12.     **Eiser,** age 37, a resident of East Northport, New York, was AppOnline's Chief Financial Officer ("CFO") from 1997 through June 2000.

13.     **Casuccio,** age 49, is a resident of Hauppauge, New York. Casuccio audited AppOnline's financial statements for the fiscal years ended December 31, 1997 and December 31, 1998.

14.     **Schneider,** age 37, is a resident of Commack, New York.  Schneider audited AppOnline's financial statements for the fiscal year ended December 31, 1998.  Schneider also performed extensive test work for the audit of AppOnline's December 31, 1999 financial statements.

15.     **Chaitovsky,** age 45, is a resident of Plainview, New York.  Chaitovsky audited AppOnline's December 31, 1999 financial statements.

16.     **Glass,** age 59, is a resident of New York, New York.   Glass reviewed and approved the audit of AppOnline's December 31, 1999 financial statements.

17.     **Nemiroff,** age 59, is a resident of Great Neck, New York.  Nemiroff was a registered principal of Ash & Co., Inc. ("Ash"), a defunct broker-dealer formerly located in New York, New York.

18.     **Siclari,** age 45, a resident of Nyack, New York, was an undisclosed principal at Ash.

19.     **Carhart,** age 53, a resident of Fort Lee, New Jersey, was an undisclosed principal at Ash.

20.     **Zelin,** age 46, is a resident of Woodbury, New York.  Zelin was a registered principal at Worthington Capital Group, Inc. ("Worthington"), a now defunct New York broker-dealer.

21.     **D'Elia**, age 31, is a resident of Hicksville, New York.  During 1997 and early 1998, D'Elia was a registered representative ("RR") at Worthington.

22.     **Brandwein,** age 42, is a resident of Commack, New York.  During 1998, Brandwein was a RR and, with Catapano, ran the Garden City, New York office of International Bond & Share ("IBS"), a now defunct broker-dealer.  Brandwein later worked at IBS's office located in Syosset, New York.

23.     **Catapano,** age 45, is a resident of Oceanside, New York.  During 1998, Catapano was a RR and, with Brandwein, ran the Garden City office of IBS.

### RELEVANT NON-PARTY

24.     **AppOnline** is a Delaware corporation that had its home office in Melville, New York.  AppOnline was a mortgage company from 1997 through June 2000.  Between May 1997 and April 1999, AppOnline was known as IMN Financial, Inc. and operated under the Island Mortgage Network trade name.  By April 2000, AppOnline had fifty branch offices in over twenty states.  AppOnline's Melville office handled all loan decisions and record-keeping functions.  Beginning in May 1997, AppOnline's stock was quoted on the NASD's Over-the-Counter Electronic Bulletin Board.  In September 1999, AppOnline's stock began trading on the American Stock Exchange.  Between 1997 and 2000, AppOnline shares traded at prices between $0.60 and $7 per share.  On July 19, 2000, AppOnline filed for bankruptcy and ceased operations.

### FACTS

**Background**

25.     AppOnline provided mortgage loans to prospective homeowners.  AppOnline obtained the funds for these mortgage loans through lines of credit from lending institutions

known as "warehouse banks." Immediately following the closing of a mortgage loan,

AppOnline would sell the mortgage loan to various financial institutions on the secondary

mortgage market. AppOnline would use the proceeds of that sale to repay the warehouse bank.

AppOnline's revenues consisted primarily of the points and other fees paid by borrowers in

connection with originating the mortgage loans.

26.     In May 1997, AppOnline's common stock began trading publicly after a merger

with a shell corporation. At that time, AppOnline's senior management consisted of Paul

Skulsky, Jeffrey Skulsky, and Capuano. Paul Skulsky was responsible for arranging financing

for AppOnline's operations and acquisitions; Jeffrey Skulsky was responsible for day to day

management of AppOnline's administrative operations; Capuano was responsible for

AppOnline's relationships with warehouse banks and supervision of its sales offices. While

Jeffrey Skulsky and Capuano were named officers of AppOnline, Paul Skulsky never received a

formal title at AppOnline because he wanted to hide the fact that a convicted felon was acting as

one of AppOnline's senior officers and directors.

27.     During 1997, AppOnline began filing annual and quarterly reports with the

Commission. Shortly after becoming a public company, AppOnline began losing money from

its operations because it was expanding its operations through acquisitions, but the mortgage fees

generated from those acquisitions did not cover the expenses of the expanding operations.

28.     AppOnline's management began to cover its operating losses by diverting for

other uses the funds that had been loaned to AppOnline for specific use as mortgage loans by the

warehouse banks. When a particular mortgage loan was then ready to close, AppOnline

delivered the funds required for that particular loan from *any* funds available (i.e., including

funds obtained for *other* pending mortgage loans). Additionally, if a specific mortgage loan did

8

not close and AppOnline needed to return the loan funds to a warehouse bank, AppOnline would

use any available funds to repay the warehouse bank, including funds that were supposed to be

used for other mortgage loans.  Over time, this practice evolved into a type of Ponzi scheme,

whereby AppOnline used later funds received from warehouse banks to fund earlier mortgage

loans.

**AppOnline's December 31, 1997 Financial Statements Were False And Misleading**

29.     On its internal financial books and records, AppOnline recorded the amount

wrongfully diverted from mortgage loan funds as a liability to certain escrow agents involved in

the transfer of the mortgage loan funds.  In fact, AppOnline owed the diverted funds to its

warehouse banks. When it came time to report publicly its financial statements, AppOnline

further disguised its growing liability to its warehouse banks by creating a phantom payable to

The Skulsky Trust, a related party controlled by Paul Skulsky and Jeffrey Skulsky.   Then, to

reduce the amount supposedly owed to The Skulsky Trust, Paul Skulsky and Casuccio directed

Eisele to offset certain debts supposedly owed to AppOnline by other related parties controlled

by Paul Skulsky and Jeffrey Skulsky against AppOnline's liability to The Skulsky Trust.  Thus,

in addition to fraudulently describing the debt as owed to The Skulsky Trust, AppOnline also

violated Generally Accepted Accounting Principles ("GAAP") by offsetting the supposed

receivables from other related parties against The Skulsky Trust payable.

30.     On March 31, 1998, AppOnline filed a Form 10-KSB for the fiscal year ended

December 31, 1997, which included AppOnline's 1997 financial statements.  Capuano signed

AppOnline's December 31, 1997 Form 10-KSB as CEO, president and a director.  Eisele signed

the Form 10-KSB as CFO.

31.     The 1997 Form 10-KSB was false and misleading because it: (a) failed to disclose

9

Paul Skulsky's management role at AppOnline; (b) misrepresented AppOnline's liabilities

because it failed to disclose that AppOnline had incurred a liability of at least $4.9 million to the

warehouse banks and, instead, falsely reported that AppOnline owed approximately $4.9 million

to The Skulsky Trust when, in fact, AppOnline did not owe The Skulsky Trust anything; and (c)

understated AppOnline's operating loss by an additional $700,000 by ignoring certain

commission expenses and overstating income from management fees.

**AppOnline's December 31, 1998 Financial Statements Were False And Misleading**

     32.    During 1998, AppOnline's operations continued to lose money.  Additionally,

because AppOnline had diverted funds designated for specific mortgage loans to pay its

operating expenses during 1997, AppOnline also had to replace those funds so that those

mortgage loans could close.  In response, AppOnline misappropriated even more funds from

warehouse banks.  To help conceal the increasing debt to its warehouse banks, AppOnline

continued to: (a) falsely report that it owed that debt to The Skulsky Trust; and (b) wrongfully

offset receivables from other related parties against AppOnline's phony debt to The Skulsky

Trust.

     33.    In addition to continuing the ongoing financial fraud concerning its debt to

warehouse banks, during 1998, Paul Skulsky, Capuano, and Casuccio artificially removed

several money-losing subsidiaries from AppOnline's financial reports.  Specifically, in March

1998 and October 1998, AppOnline entered into two phony sale transactions with Northport

Industries, Inc. ("Northport"), a shell corporation controlled by Paul Skulsky.  Through these

transactions, AppOnline appeared to have sold certain subsidiaries to Northport, but AppOnline

continued to manage the subsidiaries.  Northport executed a note payable to AppOnline for the

subsidiaries, and also agreed to pay AppOnline a management fee of $50,000 per month.

Through these paper transactions, AppOnline avoided recognizing approximately $2.4 million in losses sustained by the subsidiaries. Paul Skulsky, Capuano, and Casuccio knew that the Northport transactions were not arms-length transactions and that they served no business purpose except to enable AppOnline to avoid reporting the losses incurred by its subsidiaries.

34.     On April 15, 1999, AppOnline filed an amended Form 10-KSB for the year ended December 31, 1998. Capuano signed the Form 10-KSB as CEO, Eisele signed as CFO, and Jeffrey Skulsky signed as President. The Form 10-KSB reported $787,297 in income from operations.

35.     The 1998 Form 10-KSB was false and misleading because it: (a) failed to disclose the management role of Paul Skulsky; (b) failed to disclose that AppOnline owed at least $10.4 million to the warehouse banks and, instead, stated that AppOnline owed approximately $10.4 million to The Skulsky Trust when, in fact, it owed nothing to The Skulsky Trust; (c) failed to report at least $2.4 million in 1998 operating losses attributable to the subsidiaries that were the subject of phony sales to Northport; and (d) inflated revenues and underreported other expenses by approximately $735,000. Thus, instead of reporting $787,297 in operating income, AppOnline's 1998 Form 10-KSB should have reported an operating loss of at least $3.2 million.

**AppOnline's December 31, 1999 Financial Statements Were False And Misleading**

36.     By December 31, 1999, AppOnline had misappropriated approximately $47 million from its warehouse banks. By the end of 1999, Paul Skulsky, Jeffrey Skulsky, and Capuano decided to remove AppOnline's phony liability to The Skulsky Trust from AppOnline's balance sheet without recognizing any liability to the warehouse banks. To accomplish this, among other things, AppOnline issued 18,191,534 shares of AppOnline stock to The Skulsky Trust in exchange for extinguishing the debt AppOnline purportedly owed to The Skulsky Trust.

11

37.   On April 14, 2000, AppOnline filed with the Commission a Form 10-K for the year ended December 31, 1999, which included AppOnline's financial statements. Capuano signed the filing as CEO and chairman of the board, Eisele signed as CFO, treasurer and principal accounting officer, and Jeffrey Skulsky signed as AppOnline's president and a director.

38.   The 1999 Form 10-K was false and misleading because it: (a) failed to disclose the management role of Paul Skulsky; (b) omitted the $47 million liability to warehouse banks while stating that the previous purported debt to The Skulsky Trust had been exchanged for AppOnline equity securities; and (c) understated expenses and overstated revenues by approximately $1.5 million.

**Other False and Misleading Public Filings**

39.   In addition to the false and misleading annual reports described above, AppOnline filed quarterly reports that also contained the same type of financial misrepresentations described above. Capuano signed each of the Forms 10-QSB and 10-Q filed from 1998 to 2000, including the March 31, 1999 Form 10-QSB, as AppOnline's president, principal executive officer and principal financial officer.

40.   AppOnline's false and misleading financial statements for fiscal years 1997 and 1998 were also incorporated in registration statements filed by AppOnline. For example, AppOnline filed a Form S-1 with the Commission on December 29, 1999, which was materially misleading because it reported the false payable to The Skulsky Trust. Specifically, the Form S-1 falsely stated that approximately $15.9 million was owed to The Skulsky Trust as of September 30, 1999 when, in fact, substantially more funds were owed to the warehouse banks, as of that time.

12

## AppOnline's Auditors Participated In The Financial Fraud Scheme

41.    Casuccio audited AppOnline's 1997 financial statements and issued an audit opinion that falsely stated that AppOnline's financial statements were prepared in conformity with GAAP and that the audits were conducted in accordance with Generally Accepted Auditing Standards ("GAAS"). Casuccio and Schneider audited AppOnline's 1998 financial statements and issued an audit opinion that falsely stated that those financial statements were prepared in conformity with GAAP and that the audits were conducted in accordance with GAAS. In fact, the 1997 and 1998 financial statements were not prepared in conformity with GAAP and the audits were not conducted in accordance with GAAS.

42.    In addition to serving as manager of the 1998 audit, Schneider served as an internal auditor for AppOnline during the 1999 audit, and he helped prepare the 1999 financial statements. Specifically, Schneider prepared schedules, including an analysis of AppOnline's mortgage inventory, for the 1999 audit conducted by Chaitovsky and Glass.

43.    Chaitovsky and Glass audited AppOnline's 1999 financial statements and issued an audit opinion, which Glass signed, that falsely stated that AppOnline's financial statements were prepared in conformity with GAAP and that the audit was conducted in accordance with GAAS. In fact, the 1999 financial statements were not prepared in conformity with GAAP and the audit was not conducted in accordance with GAAS.

44.    Prior to completing their audit of the 1999 financial statements and issuing the false audit opinion, Chaitovsky and Glass learned that AppOnline had filed prior false financial statements with the Commission. Specifically, Chaitovsky and Glass learned that AppOnline's financial statements contained in the Form 10-QSB for the period ended September 30, 1999 were materially false in that they failed to include losses associated with AppOnline's Internet

division.  After learning that an illegal act had occurred, Chaitovsky and Glass failed to inform

the appropriate level of AppOnline's management and make sure that AppOnline's audit

committee was adequately informed concerning the illegal act that had been detected by

Chaitovsky and Glass.  Nor did Chaitovsky or Glass notify the Commission that they had learned

about material false filings by AppOnline during the course of their audit of AppOnline's

financial statements.

**Paul Skulsky And Others Manipulated The**
**Public Market For AppOnline Common Stock**

45.    In May 1997, AppOnline wrongfully issued 2.2 million shares of free-trading

stock to two nominee corporations controlled by Paul Skulsky.  As a result, Paul Skulsky

controlled more than 2/3 of all outstanding free-trading shares of AppOnline stock.   Thereafter,

throughout the period from May 1997 through at least April 1999, Paul Skulsky engaged in a

series of actions to manipulate the public market for AppOnline stock.  In addition to entering

into the agreements to pay bribes to brokerage firms described below, Paul Skulsky purchased

shares of AppOnline stock on the public market to prop up artificially the price of AppOnline

stock whenever his other schemes were not achieving the public market results desired by Paul

Skulsky.  AppOnline used the inflated public market price for its stock to make a series of

acquisitions of privately-held mortgage companies in exchange, in part, for artificially inflated

AppOnline stock.

### Ash Agreement

46.    In mid-1997, Paul Skulsky met Nemiroff, Carhart, and Siclari.  Nemiroff, Siclari,

and Carhart entered into an agreement with Paul Skulsky whereby they agreed to direct Ash to

sell shares of AppOnline stock controlled by Paul Skulsky to Ash retail customers in exchange

for bribes equal to approximately 45% of the net proceeds from the sale of AppOnline stock.

47.     Pursuant to this agreement, from July 1997 through December 1997, Ash sold more than 250,000 AppOnline shares to its retail customers for approximately $900,000.

48.     Nemiroff, Ash's trader, executed the AppOnline transactions at Ash. Paul Skulsky paid Nemiroff, Siclari, and Carhart the bribes by transferring stock to entities controlled by Siclari and Carhart.  Siclari and Carhart then sold the AppOnline stock received from Paul Skulsky and split the proceeds with Nemiroff.

### Worthington Agreement

49.     In approximately July 1997, Paul Skulsky and Zelin entered into an agreement pursuant to which Worthington would sell AppOnline stock to Worthington's retail customers in exchange for bribes equal to approximately 50% of the net proceeds from the sale of AppOnline stock.

50.     Pursuant to this agreement, between June 1997 and April 1998, Worthington sold over one million shares of AppOnline stock to its customers for approximately $4.3 million.

51.     Paul Skulsky paid Zelin the bribes by transferring AppOnline stock to Worthington's inventory account, and Zelin then directed that this stock be sold to Worthington's retail customers.  Zelin obtained a portion of the proceeds from Worthington's sale of AppOnline stock.  D'Elia also received bribes from Paul Skulsky and Zelin in exchange for selling, and directing other Worthington RRs to sell, AppOnline stock to Worthington's retail customers.

### IBS Agreement

52.     In late 1997 or early 1998, Paul Skulsky entered into an agreement with Brandwein and Catapano at IBS.  Paul Skulsky agreed to pay bribes to Brandwein and Catapano

equal to approximately 50% of the net proceeds from sales of AppOnline stock to IBS retail customers.

53.     From January to March 1998, Brandwein sold more than 50,000 shares of AppOnline stock to IBS retail customers. From January to March 1998, Catapano caused other RRs at IBS, including Brandwein, to sell AppOnline stock to their customers. As a result, during January to March 1998, IBS retail customers purchased approximately 100,000 AppOnline shares for approximately $360,000.

54.     Paul Skulsky paid Brandwein and Catapano approximately $180,000 in bribes in exchange for the sales of AppOnline stock to IBS retail customers.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5

(Financial Fraud Scheme –
Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider)

55.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 – 54.

56.     Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, in the offer and sale, and in connection with the purchase or sale, of AppOnline securities, knowingly or recklessly: (a) employed devices, schemes and artifices to defraud; (b) obtained money or property by means of, or otherwise, made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in

16

acts, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers of AppOnline securities and upon other persons.

57.     As part and in furtherance of the violative conduct, Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider engaged in a fraudulent scheme to conceal AppOnline's true financial condition and, among other things, made material misrepresentations and omissions in AppOnline's Forms 10-KSB, 10-K, 10-QSB, and 10-Q filed during 1997 through 2000. Paul Skulsky and Casuccio, among other things, formulated AppOnline's plan to disguise its debt to the warehouse banks as a phantom liability to The Skulsky Trust, and orchestrated the sham sales of money-losing subsidiaries to Northport. Eisele monitored AppOnline's misappropriation of funds from the warehouse banks and then mischaracterized the debt to the warehouse banks as a debt to The Skulsky Trust in AppOnline's financial statements. Capuano and Jeffrey Skulsky signed AppOnline's Forms 10-KSB and 10-K, and Capuano signed the Forms 10-QSB and 10-Q, which included the financial statements that contained materially false and misleading information. Casuccio and Schneider prepared audit opinions that falsely represented that they had performed audits in accordance with GAAS and that AppOnline's financial statements had been prepared in conformity with GAAP.

58.     The misrepresentations and omissions described in paragraphs 25 – 44 and 57 were material.

59.     Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider each knew, or were reckless in not knowing, that AppOnline's Forms 10-KSB, 10-K, 10-QSB, and 10-Q contained material misrepresentations and failed to disclose material information.

60.     By reason of the foregoing, Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider, singly or in concert, directly or indirectly, violated and unless enjoined

will again violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the

Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

(Financial Fraud Scheme - Chaitovsky and Glass)

61.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 - 54.

62.     Chaitovsky and Glass, directly or indirectly, singly or in concert, by use of the

means or instrumentalities of interstate commerce, or of the mails, in connection with the

purchase or sale of AppOnline securities, knowingly or recklessly: (a) employed devices,

schemes and artifices to defraud; (b) made untrue statements of material fact, or omitted to state

material facts necessary in order to make statements made, in light of the circumstances under

which they were made, not misleading; and/or (c) engaged in acts, practices and courses of

business which operated or would have operated as a fraud or deceit upon purchasers of

AppOnline securities and upon other persons.

63.     As part and in furtherance of the violative conduct, Chaitovsky and Glass

engaged in a fraudulent scheme to conceal AppOnline's true financial condition and, among

other things, made material misrepresentations and omissions in AppOnline's Form 10-K for the

year ended December 31, 1999.  Chaitovsky and Glass prepared an audit opinion that falsely

stated they had performed an audit in accordance with GAAS and that AppOnline's financial

statements had been prepared in conformity with GAAP.

64.     The misrepresentations and omissions described in paragraphs 25 – 44 and 63

were material.

65.     Chaitovsky and Glass each knew, or were reckless in not knowing, that AppOnline's 1999 Form 10-K contained material misrepresentations and failed to disclose material information.

66.     By reason of the foregoing, Chaitovsky and Glass, singly or in concert, directly or indirectly, violated and unless enjoined will again violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### THIRD CLAIM FOR RELIEF

**Violations of Section 17(a) of the Securities Act and Sections 10(b)
of the Exchange Act and Rule 10b-5**

(Market Manipulation Scheme –
Paul Skulsky, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano)

67.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 – 54.

68.     Paul Skulsky, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, in the offer and sale, and in connection with the purchase or sale of AppOnline securities, knowingly or recklessly: (a) employed devices, schemes and artifices to defraud; (b) obtained money or property by means of, or otherwise made untrue statements of material fact, or have omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers of AppOnline securities and upon other persons.

69.     As part and in furtherance of the violative conduct, Paul Skulsky, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano engaged in a fraudulent scheme in

which Paul Skulsky paid bribes to Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and

Catapano to sell AppOnline stock to their respective brokerage firms' retail customers, and

manipulated the public market for AppOnline stock by, among other things, artificially

subsidizing the public market and distorting both the trading volume and price for AppOnline

stock.

70.     Paul Skulsky, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano

acted knowingly or recklessly.

71.     In addition, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano

failed to disclose to the retail customers of their respective broker-dealers who purchased

AppOnline stock that Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano were

receiving compensation equal of approximately 45%-50% of the proceeds from sales of

AppOnline stock. Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano also failed

to direct RRs to disclose the additional compensation and the RRs did not make any such

disclosures when selling the AppOnline stock to their customers.

72.     By reason of the foregoing, Paul Skulsky, Nemiroff, Siclari, Carhart, Zelin,

D'Elia, Brandwein, and Catapano, singly or in concert, directly or indirectly, violated and unless

enjoined will again violate Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a),  Section 10(b)

of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### FOURTH CLAIM FOR RELIEF

**Violations of Section 13(b)(5) of
the Exchange Act and Rule 13b2-1**

(Falsification of Corporate Books and Records and Circumvention of Internal Controls –
Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider)

73.   The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 – 54.

74.   Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider each knowingly circumvented or knowingly failed to implement a system of internal accounting controls sufficient to provide reasonable assurance, among other things, that transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles, or any other criteria applicable to such statements.

75.   Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider each knowingly falsified, directly or indirectly, or caused to be falsified books, records and accounts of AppOnline that were subject to Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A).

76.   By reason of the foregoing, Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, and Schneider have violated, and unless enjoined will again violate, Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.

### FIFTH CLAIM FOR RELIEF

**Violations of Section 13(a) of the
Exchange Act and Rules 12b-20, 13a-1, and 13a-13**

(Corporate Reporting Violations –
Liability of Paul Skulsky, Jeffrey Skulsky, and Capuano)

77.   The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 - 54.

78.   AppOnline failed to file with the Commission, in accordance with the rules and regulations prescribed by the Commission, such annual and quarterly reports as the Commission has prescribed and AppOnline failed to include, in addition to the information expressly required

to be stated in such reports, such further material information as was necessary to make the statements made therein, in light of the circumstances in which they are made, not misleading, in violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.  As described above, the Forms 10-KSB and 10-K and Forms 10-QSB and 10-Q were false and misleading because they misstated AppOnline's financial condition, including among other things, its liabilities, income and expenses.

79.     By reason of the foregoing, AppOnline violated Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

80.     At all times relevant hereto, Paul Skulsky, Jeffrey Skulsky, and Capuano each was a controlling person of AppOnline for the purposes of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

81.     By reason of the foregoing, Paul Skulsky, Jeffrey Skulsky, and Capuano are each liable as controlling persons, pursuant to Section 20(a) of the Exchange Act, for AppOnline's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13, and unless enjoined they will again violate, Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.



## SIXTH CLAIM FOR RELIEF

**Violations of Section 13(a) of the
Exchange Act and Rules 12b-20, 13a-1, and 13a-13**

(Corporate Reporting Violations –
Liability of Eisele, Casuccio, and Schneider)

82.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 - 54.

83.    AppOnline failed to file with the Commission, in accordance with the rules and regulations prescribed by the Commission, such annual and quarterly reports as the Commission has prescribed and AppOnline failed to include, in addition to the information expressly required to be stated in such reports, such further material information as was necessary to make the statements made therein, in light of the circumstances in which they are made, not misleading, in violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.  As described above, the Forms 10-KSB and 10-K and Forms 10-QSB and 10-Q were false and misleading because they misstated AppOnline's financial condition, including among other things, its liabilities, income and expenses.

84.    By reason of the foregoing, AppOnline violated Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

85.    At all times relevant hereto, Eisele, Casuccio, and Schneider knew of AppOnline's violations described in paragraphs 83-84.

86.    At all relevant times, Eisele, Casuccio, and Schneider substantially assisted in AppOnline's conduct in violation of Section 13(a) and Rules 12b-20, 13a-1, and 13a-13.

87.     By reason of the foregoing, Eisele, Casuccio, and Schneider engaged in conduct that constitutes aiding and abetting, within the meaning of Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), of AppOnline's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13, and unless enjoined they will again violate Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

### SEVENTH CLAIM FOR RELIEF

#### Violations of Section 13(a) of the
#### Exchange Act and Rules 12b-20 and 13a-1

(Corporate Reporting Violations – Liability of Chaitovsky and Glass)

88.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 - 54.

89.     AppOnline failed to file with the Commission, in accordance with the rules and regulations prescribed by the Commission, such annual reports as the Commission has prescribed and AppOnline failed to include, in addition to the information expressly required to be stated in such reports, such further material information as was necessary to make the statements made therein, in light of the circumstances in which they are made, not misleading, in violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.12b-20 and 240.13a-1.  As described above, the Form 10-K for FY 1999 contained financial statements that were false and misleading because they misstated AppOnline's financial condition, including among other things, its liabilities, income and expenses.

90.     By reason of the foregoing, AppOnline violated Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1.

91. At all times relevant hereto, Chaitovsky and Glass knew of AppOnline's violations described in paragraphs 89-90.

92. At all relevant times, Chaitovsky and Glass substantially assisted AppOnline's conduct in violation of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1.

93. By reason of the foregoing, Chaitovsky and Glass aided and abetted, within the meaning of Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), AppOnline's violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1, and unless enjoined they will again violate Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.12b-20 and 240.13a-1.

## EIGHTH CLAIM FOR RELIEF

### Violations of Section 13(b)(2) of the Exchange Act

(Corporate Recordkeeping and Internal Control Violations --
Liability of Paul Skulsky, Jeffrey Skulsky, and Capuano)

94. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 – 54.

95. AppOnline failed to:

    a.    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets; and

    b.    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:

        i.    transactions were executed in accordance with management's general or specific authorization;

ii.     transactions were recorded as necessary to permit

preparation of financial statements in conformity with

generally accepted accounting principles or any other

criteria applicable to such statements, and to maintain

accountability for assets;

iii.    access to assets was permitted only in accordance with

management's general or specific authorization; and

iv.     the recorded accountability for assets was compared with

the existing assets at reasonable intervals and appropriate

action was taken with respect to any differences,

in violation of Section 13(b)(2) of the Exchange Act, 15 U.S.C § 78m(b)(2).  As described

above, AppOnline's internal accounting controls were insufficient to cause AppOnline to prepare

its 1997, 1998, and 1999 annual or quarterly financial statements in accordance with GAAP.

96.     At all relevant times hereto, Paul Skulsky, Jeffrey Skulsky, and Capuano each

were controlling persons of AppOnline for the purposes of Section 20(a) of the Exchange Act,

15 U.S.C. § 78t(a).

97.     By reason of the foregoing, Paul Skulsky, Jeffrey Skulsky, and Capuano are each

liable as controlling persons, pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a),

for AppOnline's violations of Section 13(b)(2) of the Exchange Act; and unless they are

enjoined, Paul Skulsky, Jeffrey Skulsky, and Capuano will again engage in conduct that would

render them liable for violations of Section 13(b)(2) of the Exchange Act.



### NINTH CLAIM FOR RELIEF

#### Violations of Section 13(b)(2) of the Exchange Act

(Corporate Recordkeeping and Internal Control Violations –
Liability of Eisele, Casuccio and Schneider)

98.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 – 54.

99.     At all times relevant hereto, Eisele, Casuccio, and Schneider knew of

AppOnline's violations described in paragraph 95.

100.    At all times relevant hereto, Eisele, Casuccio, and Schneider substantially assisted

AppOnline's conduct in violation of Section 13(b)(2) of the Exchange Act.

101.    By reason of the foregoing, Eisele, Casuccio, and Schneider engaged in conduct

that constitutes aiding and abetting, within the meaning of Section 20(e) of the Exchange Act, 15

U.S.C. § 78t(e), of AppOnline's violations of Section 13(b)(2) of the Exchange Act, and unless

enjoined they will again violate Section 13(b)(2) of the Exchange Act.

### TENTH CLAIM FOR RELIEF

#### Violations of Section 10A of the Exchange Act

(Chaitovsky and Glass)

102.    The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 – 54.

103.    Chaitovsky and Glass, while auditing AppOnline's December 31, 1999 financial

statements detected or otherwise became aware of information indicating that an illegal act had

or may have occurred.

104.    Chaitovsky and Glass failed to take the steps required by Section 10A of the

Exchange Act.  In particular, Chaitovsky and Glass failed to determine whether it was likely an

illegal act had occurred, and, if so, to consider the possible effect of the illegal act on AppOnline's financial statements. Chaitovsky and Glass also failed to take appropriate remedial action, including, informing the appropriate level of AppOnline management and assuring that AppOnline's audit committee was adequately informed with respect to the illegal act. Finally, Chaitovsky and Glass failed to notify the Commission that, during the course of their audit of AppOnline's financial statements, they had learned of material misstatements in AppOnline's previously-filed financial reports.

105.    By reason of the foregoing, Chaitovsky and Glass have violated, and unless enjoined they will again violate, Section 10A of the Exchange Act, 15 U.S.C. § 78j-1.


## **PRAYER FOR RELIEF**

**WHEREFORE,** the Commission respectfully requests a Final Judgment:

### **I.**

Permanently enjoining Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, Schneider, Chaitovsky, Glass, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, Catapano, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### **II.**

Permanently enjoining Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, Schneider, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, Catapano, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive

actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## III.

Permanently enjoining Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, Schneider, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.

## IV.

Permanently enjoining Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, Schneider, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating, directly or indirectly, as a controlling person, or as an aider and abettor, of Sections 13(a) and 13(b)(2) of the Exchange Act, 15 U.S.C. §§ 78m(a) and 78m(b)(2), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

## V.

Permanently enjoining Chaitovsky, Glass, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating, directly or indirectly, or as an aider or abettor, Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.12b-20 and 240.13a-1.

**VI.**

Permanently enjoining Chaitovsky, Glass, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating, directly or indirectly, Section 10A of the Exchange Act, 15 U.S.C. § 78j-1.

**VII.**

Ordering Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, Schneider, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, and Catapano to disgorge the ill-gotten gains they received as a result of their violations of the federal securities laws and to pay prejudgment interest thereon.

**VIII.**

Ordering Paul Skulsky, Jeffrey Skulsky, Capuano, Eisele, Casuccio, Schneider, Nemiroff, Siclari, Carhart, Zelin, D'Elia, Brandwein, Catapano, Chaitovsky, and Glass to pay civil money penalties, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and/or Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**IX.**

Permanently barring Paul Skulsky, Jeffrey Skulsky, and Capuano from acting as an officer or director of a public company, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2).

X.

Granting such other and further relief as the Court may deem just and proper.


Dated:  New York, New York
        March 12, 2002




WAYNE M. CARLIN  (WC-2114)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
233 Broadway
New York, New York 10279
(646) 428-1510


Of Counsel:

Kay L. Lackey
Robert Knuts
Paul G. Gizzi
Jonathan A. Roberts